IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMUEL J. HUNT,

                      Plaintiff,                            No. 06:12-cv-01964-HZ

        v.

CAROLYN W. COLVIN,                         OPINION & ORDER
Acting Commissioner of Social Security,

                     Defendant.

Kathryn Tassinari
Drew Johnson
DREW L. JOHNSON, P.C.
1700 Valley River Drive
Eugene, Oregon 97401

       Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

1 - OPINION & ORDER

Nancy A. Mishalanie
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

      Attorneys for Defendant

HERNANDEZ, District Judge:

      Plaintiff Samuel Hunt brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on January 5, 2009, alleging an onset date of June 15, 2003.[1] Tr. 245-49. His application was denied initially and on reconsideration. Tr. 106-27.

      On August 1, 2011, Plaintiff appeared in person, with counsel appearing by telephone, for a hearing before an Administrative Law Judge (ALJ). Tr. 45-77. On August 10, 2011, the ALJ found Plaintiff not disabled. Tr. 26-44. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on emotional issues from childhood abuse, inability to focus, depression, back pain, fetal alcohol syndrome, dyslexia, and a heart problem. Tr. 300. At the time of the hearing, he was fifty-four years old. Tr. 51. The record contains conflicting information regarding his education. At the hearing Plaintiff testified that he dropped out of

---

    [1] Plaintiff later amended his alleged onset date to January 1, 2007. Tr. 49.

school in the seventh grade and did not obtain a general equivalency degree. Tr. 51-52. But, he stated in his disability report that he completed twelfth grade and did not attend special education classes and he reported to a consultative examiner that he dropped out of school at age sixteen, attended special education classes, and had a diploma mailed to him from Arizona. Tr. 307, 397. He has past relevant work experience as a dry dock worker, truck driver, meat grader, hod carrier, deck hand, dishwasher, and general laborer. Tr. 19, 64, 362. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the

3 - OPINION & ORDER

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2007, his amended alleged onset date.  Tr. 12.  Next, at step two, the ALJ determined that Plaintiff had the following severe impairments:  degenerative disk disease of the lumbar spine, status post knee surgery, borderline intellectual functioning, cognitive disorder not otherwise specified (NOS), psychotic disorder NOS, dysthymic disorder NOS, depressive disorder NOS, generalized anxiety disorder, and a history of polysubstance abuse.  Id. At step three, the ALJ determined that plaintiff's impairments did not meet or equal, either singly

or in combination, a listed impairment.  Tr. 13.

At step four, the ALJ concluded that plaintiff has the residual functional capacity (RFC) to perform light work except (1) he can occasionally stoop, crouch, and climb ropes, ladders, and scaffolds; (2) he can frequently balance, kneel, crawl, and climb ramps and stairs; (3) he can have no more than frequent exposure to vibrations; (4) he is able to understand, remember, and carry out one- and two-step instructions and tasks only; (5) he needs work instructions presented to him orally; (6) he is limited to only brief, incidental contact with the general public, with no more than frequent contact with co-workers and supervisors; and (7) his educational level is marginal. Tr. 14-15.  With this RFC, the ALJ determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 19.  However, at step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as bench assembler, paper inserter, and small product assembler.  Tr. 19-20.  Thus, the ALJ determined that Plaintiff is not disabled. Tr. 20.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

In his Opening Memorandum, Plaintiff asserts in a "Summary of Issues" that the ALJ

made the following five errors:  (1) failed to give clear and convincing reasons for rejecting

Plaintiff's testimony; (2) failed to give clear and convincing reasons for rejecting the opinion of

the examining psychologist David R. Truhn, Psy. D.; (3) failed to credit the opinion of Paul

Rethinger, Ph. D., the Disability Determination Services (DDS) reviewing psychologist; (4)

failed to credit the full opinion of Dr. DeWayde Perry, an examining physician; and (5) failed to

meet his burden that Plaintiff retains the ability to perform other work in the national economy.

Pl.'s Mem. at 12-13.  In the discussion section following this "Summary of Issues," Plaintiff fails

to discuss the alleged errors in rejecting Plaintiff's testimony or in failing to credit the full

opinion of Dr. Perry.  And, Plaintiff includes a discussion of an alleged error not noted in the

"Summary of Issues":  that the ALJ erred in failing to credit an assessment by Goodwill

Industries.  As a result, I discuss the alleged errors regarding the opinions of Dr. Truhn and Dr.

Rethinger, as well as the Goodwill Assessment and the step five conclusion that Plaintiff can

perform other work in the national economy but I do not separately address the other alleged

errors.

I.  Dr. Truhn

On October 20, 2008, Dr. Truhn completed a comprehensive psychological examination

of Plaintiff consisting of a personal interview, the administration of several psychological tests,

and a review of medical records.  Tr. 395-03.  In his summary, Dr. Truhn noted that Plaintiff has

a low level of intellectual functioning that significantly impairs his verbal comprehension, his

ability to deal with day-to-day problems, and his concentration and attention.  Tr. 402.  The

intellectual testing showed him to have marginal verbal comprehension skills such that Dr. Truhn

recommended that information would need to be presented to Plaintiff in a simplistic fashion

with frequent "check ins" by the presenter to confirm Plaintiff's understanding of the material.

Tr. 399.  He has poor academic functioning in calculation and applied math problems.  Tr. 402.

        Based on his examination, Dr. Truhn diagnosed Plaintiff with borderline intellectual

functioning, psychotic disorder NOS, depressive disorder NOS, cognitive disorder NOS,

amphetamine dependence in full sustained remissions by client report, R/O dysthymic disorder

early onset, and R/O cannabis abuse.  Tr. 402.  He rated his current Global Assessment of

Functioning Score at 44.  Id.

        In December 2008, Dr. Truhn completed a Mental Residual Functional Capacity Report

("Mental RFC Report") in which he assessed Plaintiff as markedly limited in the following

abilities:  (1) remember locations and work-like procedures; (2) understand and remember very

short and simple instructions; (3) understand and remember detailed instructions; (4) carry out

very short and simple instructions; (5) carry out detailed instructions; (6)  maintain attention and

concentration for extended periods; (7) make simple work related decisions; and (8) complete a

normal workday and workweek without interruptions from psychologically based symptoms and

to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr.

447-48.

7 - OPINION & ORDER

The ALJ accepted Dr. Truhn's diagnoses of borderline intellectual functioning, cognitive disorder NOS, psychotic disorder NOS, dysthymic disorder NOS, and depressive disorder NOS. Tr. 12.  In his discussion at steps two and three of the sequential analysis, the ALJ also cited Dr. Truhn's narrative report in support of the ALJ's finding that Plaintiff had marked difficulties in concentration, persistence, and pace.  Tr. 14.

But, in determining Plaintiff's RFC, the ALJ gave "little weight" to the opinions in Dr. Truhn's December 2008 Mental RFC Report.  Tr. 18.  The ALJ explained that Dr. Truhn's opinions were inconsistent with Plaintiff's history of semi-skilled work and the absence of mental health treatment in the record.  Id.  The ALJ also noted that Plaintiff gave inaccurate information to Dr. Truhn when he said that he had not worked for a paycheck since 2001 when Plaintiff's earnings record shows earnings every year between 2001 and Dr. Truhn's 2008 examination.  Id.

Plaintiff argues that while he does have a history of semi-skilled work until 2008, his earning record shows very low earnings such as $18,018 in 1994, $11,871 in 1999, and well below that in other years.  Tr. 252.  In response, Defendant notes that the amount of money that Plaintiff actually earned is irrelevant to the fact that he performed semi-skilled work.  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. §§ 404.1568(b), 416.968(b).  Such work "may require . . . activities which are . . . less complex than skilled work, but more complex than unskilled work."  Id.  It is the historical performance of semi-skilled work that the ALJ found to be inconsistent with Dr. Truhn's mental RFC limitations.  Plaintiff's actual earnings from that work are not a basis upon which to conclude that the ALJ erred.

Next, Plaintiff states that contrary to the ALJ's remark that there is an absence of mental

health treatment in the record, Plaintiff did receive mental health treatment between August 2009 and March 2010.  Tr. 449-61.  Furthermore, he argues that he testified that he stopped his counseling sessions because he was lacking funds and could not find a reliable ride to Eugene from his home in Junction City.  Tr. 62.  As a result, his failure to continue treatment cannot be used to reject Dr. Truhn's opinions.  See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) (failure to receive medical treatment when the claimant had no medical insurance cannot support an adverse credibility finding); Soc. Sec. Ruling (SSR) 96-7p, available at 1996 WL 374186, at *7-8 (ALJ "must not draw inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment").

The only record of mental health treatment in the Administrative Record shows that Plaintiff began mental health counseling at Direction Service Counseling Center in August 2009, after he filed his disability applications.  Tr. 449-61.  And, even when he began mental health treatment at that time, he went to counseling sessions only a total of eight times.  Id.  (showing appointments on August 5, 2009, August 17, 2009, August 31, 2009, September 7, 2009, September 22, 2009, September 29, 2009, November 17, 2009, and December 30, 2009).  A March 20, 2010 Termination Summary states that Plaintiff's last contact with the Center was December 30, 2009, and despite several attempts by the Center to contact him between that date and March 30, 2010, Plaintiff never made any return contact.  Tr. 449.  As a result, the Center terminated his care effective March 30, 2010.  Id.  At the hearing, the ALJ asked Plaintiff why he stopped going to counseling at Direction Service Counseling to which Plaintiff responded that

we were in between having problems with money going back and forth to Eugene from Junction City and I didn't have a [] based ride that I can depend on and I kept counseling or counseling appointments and then I just called the doctor and just told him that I'm not going to be able to make it and I apologized for having to reschedule every time and he set it up in a month.

Tr. 62.

Defendant contends that the record does not support Plaintiff's testimony that he could not find transportation to counseling. Defendant cites to the "Termination Summary" which noted the complete failure of Plaintiff to contact the Center. Additionally, Defendant notes that according to Plaintiff, he stopped driving two years before his hearing before the ALJ, which would have been August 2009, right when he began counseling. Defendant states that Plaintiff could have sought counseling treatment before that date and could have driven himself to appointments.

Defendant argues that the record supports the inference that Plaintiff sought mental health counseling not because his symptoms were actually debilitating but because he needed to support his disability claim with mental health treatment to establish his credibility. Given that he sought limited treatment only after he applied for disability, left treatment with no explanation after only a very short time, could have started treatment when he still was driving, and was able to access medical attention when he needed it despite his claim of lack of funds, Tr. 381 (emergency room visit for chest pain), 456 (counseling note in November 2009 that Plaintiff had cosmetic surgery), Defendant argues that the ALJ's conclusion that the absence of mental health treatment records was inconsistent with Dr. Truhn's opinion is supported by substantial evidence.

I agree with Defendant. While the record suggests that many of Plaintiff's impairments are longstanding, Plaintiff did not seek any mental health treatment until several months after he

10 - OPINION & ORDER

filed for disability.  It is a reasonable inference for the ALJ to conclude that an individual with alleged marked impairments would have a more extensive history of mental health treatment. Moreover, when Plaintiff finally sought such treatment, it lasted only several sessions.  And, contrary to Plaintiff's hearing testimony that he explained to the Center that he was not "going to be able to make it," the records show he terminated the treatment with no explanation.

Additionally, Plaintiff's hearing testimony does not support his position that he stopped the counseling sessions because he could not afford to continue them.  His testimony concerns problems finding the money for a ride back and forth, not for the actual treatment.  Although I disagree with Defendant's citation to Plaintiff's emergency room visit and unspecified cosmetic surgery as evidence that Plaintiff had funds to pay for medical care at a time when he claimed he could not afford counseling, the record overall supports the ALJ's finding that Dr. Truhn's marked limitations were inconsistent with Plaintiff's lack of mental health treatment.

Because the ALJ's interpretation of the mental health treatment record is reasonable and is supported by substantial evidence, I defer to the ALJ's conclusion that Plaintiff's mental health treatment was limited.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (if the evidence could result in "more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); Batson v. Comm'r, 359 F.3d 1190, 1196 (9th Cir. 2004) (court may not substitute its judgment for that of the ALJ if the evidence "reasonably supports either confirming or reversing the ALJ's decision").  Given the ALJ's interpretation of the record, he did not err by finding Plaintiff's lack of mental health treatment to be inconsistent with Dr. Truhn's opinion.

Finally, Plaintiff contends that the ALJ erred in disregarding Dr. Truhn's opinion because Plaintiff provided Dr. Truhn inaccurate information about his work history.  Plaintiff does not

deny that the earnings record shows that he worked every year between 2001 and the 2008 examination by Dr. Truhn.  But, Plaintiff states that Dr. Truhn was aware that Plaintiff's reporting may not have been accurate because Dr. Truhn stated that there was a strong possibility that Plaintiff's poor verbal communication skills affected his ability to report symptoms.  Tr. 402. Notably, Dr. Truhn indicated that Plaintiff's impaired verbal skills could have affected his ability to report his symptoms.  He did not suggest that the impairment affected Plaintiff's ability to report something as straightforward as his work history.  As a result, the ALJ did not err by noting that Plaintiff provided Dr. Truhn with inaccurate information.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Id.

The ALJ provided clear and convincing reasons for rejecting Dr. Truhn's opinion. Plaintiff's work history performing semi-skilled jobs is inconsistent with the limitations opined by Dr. Truhn.  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (affirming rejection of medical opinion because proffered limitations were inconsistent with the level of activity the plaintiff had engaged in); Bjordal v. Astrue, No 06:09-cv-01216-TC, 2011 WL 4625752, at *5-6 (D. Or. July 29, 2011) (rejecting examining doctor's work limitation opinion because it was inconsistent with the plaintiff's work history, her testimony, and other medical evidence in the record).

Plaintiff's lack of mental health treatment is also inconsistent with Dr. Truhn's opinion

12 - OPINION & ORDER

because a lack of treatment can rationally suggest an absence of severe symptoms.  See Burch,

400 F.3d at 681 (lack of treatment may be "powerful evidence" of the extent of symptoms); 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (treatment may be "an important indicator of the

intensity and persistence of [a claimant's] symptoms").  Finally, as explained above, the record

supports the ALJ's conclusion that Plaintiff provided Dr. Truhn erroneous information about his

work history.  This undermines the reliability of Dr. Truhn's opinions.

II.  Dr. Rethinger

　　　　On March 30, 2009, Dr. Rethinger completed a Psychiatric Review Technique Form

(PRTF) and a Mental Residual Functional Capacity Assessment (MRFCA).  Tr. 412-29.  The

period assessed was June 15, 2003 to March 25, 2009.  Tr. 412, 426.  In the "B Critera" of the

PRTF, Dr. Rethinger assessed Plaintiff as having marked difficulties in maintaining

concentration, persistence, or pace.  Tr. 422.  In the MRFCA, Dr. Rethinger assessed Plaintiff as

having marked limitation in the ability (1) to understand and remember detailed instructions; (2)

to carry out detailed instructions; (3) to interact appropriately with the general public; (4) to get

along with coworkers or peers without distracting them or exhibiting behavioral extremes; and

(5) to set realistic goals or make plans independently of others.  Tr. 426-27.  The marked

limitation in the ability to carry out detailed instructions was the only limitation Dr. Rethinger

assessed in the category of "Sustained Concentration and Persistence."  Id.  He also commented

at the end of the MRFCA that Plaintiff was capable of but limited to understanding and

remembering simple instructions and that he was limited to performing simple 1-2 step tasks "but

can maintain attention/conc and complete a normal workweek w/o special supervision."  Tr. 428.

He added that Plaintiff would "do best in a work setting that was predictable and slow paced

13 - OPINION & ORDER

w/minimal distraction" and would "need instructions presented orally." Id.

      The ALJ rejected Dr. Rethinger's opinions that Plaintiff is moderately limited in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes and in his ability to set realistic goals or make plans independently of others. Tr. 18. The ALJ found these opinions to be inconsistent with the limited mental health treatment in the record. Id. He also found the opinion with respect to getting along with co-workers or peers to be inconsistent with Plaintiff's repeated reports that he generally gets along with co-workers and supervisors and his activities of carrying for his family and parents, going shopping, and attending church. Id. The ALU further found that Dr. Rethinger's opinion with respect to setting realistic goals or making plans independently of others was inconsistent with Plaintiff's ability to care for his family, including his young stepson and his parents. Id.

      Plaintiff concedes that the ALJ's RFC which limits Plaintiff to "brief, incidental" contact with the general public and no more than frequent contact with co-workers and supervisors is supported by the evidence. Pl.'s Brief at 16. Moreover, I agree with Defendant that the ALJ gave valid reasons for rejecting Dr. Rethinger's MRFCA because, as noted above, activities that conflict with a physician's opinion of limitations are a legitimate basis for the ALJ to consider in determining how much weight to accord that opinion. E.g., Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (holding that "normal activities of daily living, including cooking, house cleaning, doing laundry, and helping her husband in managing finances" may suggest the claimant is capable of performing the basic demands of work on a sustained basis); Molina v. Astrue, 674 F.3d, 1104, 1113 (9th Cir. 2012) ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the

14 - OPINION & ORDER

extent that they contradict claims of a totally debilitating impairment").  Additionally, as noted above, Plaintiff's limited mental health treatment is supported in the record and the ALJ accurately noted that according to Plaintiff's own self-reports, he got along well with co-workers and supervisors.  Tr. 397, 405.

Plaintiff contends that the ALJ erred by failing to accept Dr. Rethinger's assessment that Plaintiff is markedly limited in concentration, persistence, or pace.  Plaintiff points to testimony by the VE that such a limitation, along with the ALJ's assessed moderate limitation in social functioning, would preclude competitive full-time work.  Tr. 14, 69.

Plaintiff's argument misapprehends the difference between Dr. Rethinger's assessment in the PRTF and his functional assessments in the MRFCA.  The Commissioner uses the PRTF at steps two and three of the decision-making process to determine whether a claimant has mental impairments that more than minimally affect the claimant's ability to work and whether the mental impairments are equivalent to any of the presumptively disabling conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520a, 416.920a; SSR 96-8p, available at 1996 WL 374184, at *4 (explaining that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process" and that the "mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF").

The PRTF addresses broad categories of function, such as restriction of activities of daily

15 - OPINION & ORDER

living and difficulties in maintaining concentration, persistence, or pace.  E.g., Tr. 422; 20 C.F.R.
§§ 404.1520a(c)(3), 416.920a(c)(3).  The assessment includes five degrees of limitation, ranging
from none to extreme.  Id.; 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  An "extreme" rating
"represents a degree of limitation that is incompatible with the ability to do any gainful activity."
Id.

For the RFC assessment, the Commissioner does not use the broad categories of function
used in the PRTF.  Instead, those broad categories are broken into twenty specific work-related
abilities which are contained on the standard MRFCA form.  E.g., Tr. 426-27; see also 20 C.F.R.
§§ 404.1520a(d)(3), 416.920a(d)(3) (noting that if the Commissioner determines that a claimant
has a severe mental impairment which does not meet or equal a listed impairment, the
Commissioner will then proceed to assess the claimant's residual functional capacity).

Here, Dr. Rethinger's marked limitation in concentration, persistence, or pace, was in the
PRTF, not his MRFCA.  Thus, the ALJ properly did not consider it in determining Plaintiff's
RFC.  Moreover, Dr. Rethinger's opinion in the PRTF is consistent with his MRFCA assessment
which breaks the general category of the ability to maintain concentration, persistence, or pace of
the PRTF into eight separate specific abilities required to maintain concentration, persistence, or
pace.  In his MRFCA, Dr. Rethinger assessed Plaintiff as having a marked ability in the ability to
carry out detailed instructions but otherwise assessed Plaintiff as not significantly limited in the
seven other specific abilities under the broad concentration, persistence, or pace category.  And,
as noted above, in his narrative, he specifically mentioned Plaintiff's ability to maintain
concentration and attention within the context of performing simple 1-2 step tasks.  The ALJ did
not err in his consideration of Dr. Rethinger's opinion.

III.  Goodwill Industries Assessment

On December 10, 2008, Debra Hargett of Goodwill Industries completed a Situational

Assessment Report of Plaintiff.  Tr. 365-67.  The assessment period ran from November 3, 2008[2]

to November 26, 2008 when Plaintiff worked at the Junction City Goodwill store.  Id.  He was

given a light duty position which involved stocking household goods on store shelves, removing

items from shelves, unloading customer items in the drive through, and assisting customers as

needed.  Id.

Hargett made many observations of Plaintiff's work performance including that he was on

time and clocked in and out as required, was productive and eager to learn new tasks, and dressed

appropriately for work.  Id.  He was social, approachable, and respectfully listened to instructions

and constructive criticism.  Id.  He exhibited traits of a good team player.  Id.  Hargett noted that

Plaintiff had a difficult time physically and there were times he was in obvious discomfort when

he was observed holding his back or limping.  Id.  Hargett reported Plaintiff's physical stamina as

low and expressed a concern that despite his pain, he pushed himself too hard to finish tasks or

help others and risked having to leave early or call in sick the next day.  Id.  Because of his

"physical limitations," it was clear to supervisors that they could not assign random tasks to

Plaintiff.  Id.  His lack of physical ability created stress for Plaintiff and he expressed sadness

over not being able to do the amount of physical work he used to be able to do.  Id.  Hargett

stated that considering the pain he was in, Plaintiff performed at a high level.  Id.

In the summary discussing Plaintiff's employability, Hargett wrote that Plaintiff was

motivated, social, and helpful.  Tr. 369.  However, Plaintiff's lack of physical abilities caused

---

[2]  The narrative portion refers to the start date as October 3, 2008.  Tr. 366.

17 - OPINION & ORDER

Hargett to conclude that Plaintiff was not suitable for competitive employment.  Id.  She stated

that ordinarily, Goodwill would recommend that Plaintiff secure skills in a field that does not

require physical strength and stamina, but that due to Plaintiff's learning disability and what she

noted as his fifth-grade education, this would be difficult.  Id.

In June 2009, Plaintiff was examined by Dr. Perry.  Tr. 432-36.  Dr. Perry noted that

Plaintiff's chief complaint was back pain, he took no medications, and had no past medical

history.  Id.  Plaintiff described his pain as constant with radiation into his left foot.  Id.  He

complained that his pain caused him to lie in bed three days per week and stated that he used hot

packs, hot baths, and rest to relieve the pain.  Id.

Dr. Perry noted that Plaintiff sat comfortably during the examination and had no difficulty

getting on and off the examination table.  Id.  On physical examination, Dr. Perry found no

evidence of foot drop bilaterally.  Id.  Straight leg raising in the supine position was positive at

sixty degrees on the right and forty-five degrees on the left, but with no radiating back pain in the

lumbar region.  Id.  Plaintiff had moderate tenderness to palpation in the midline, as well as the

right and left paraspinal musculature of the lumbar spine, left greater than right.  Id.  Motor

strength was 5/5 in the lower extremities bilaterally, as well as in both feet.  Id.  The diagnosis

was lumbar radiculopathy.  Id.

Based on his examination, Dr. Perry rendered the following opinions of Plaintiff's

physical abilities:  (1) maximum standing and walking was up to four hours if Plaintiff did not

require any significant physical activity, "i.e., if there is mostly standing," but up to two hours

maximum if significant physical activity is involved; (2) up to six hours of sitting with

alternating between sitting and standing; (3) lifting and carrying twenty pounds occasionally and

18 - OPINION & ORDER

ten pounds frequently; (4) no limitations on balance; (5) occasionally stooping, but no climbing, kneeling, crouching, or crawling; (6) no manipulative limitations; and (7) no working at heights. Tr. 435-36.

The ALJ gave little weight to the Goodwill Assessment. Tr. 18. The ALJ correctly noted that the Goodwill Assessment indicated that Plaintiff was unemployable due to his learning disability, fifth-grade education, and physical limitations. Id. The ALJ explained that based on Dr. Truhn's testing, Plaintiff did not have a learning disability. Id. Furthermore, Plaintiff reported various, contradictory accounts regarding his education. Id. And, the Assessment was inconsistent with the limited physical examination findings by Dr. Perry as well as the absence of treatment records. Id.

Plaintiff agrees that his reporting as to his education is unclear and that testing showed that he does not have a learning disorder. However, he argues that test results have established disabling mental limitations that are consistent with the Goodwill Assessment. In support of that argument, Plaintiff cites to Dr. Truhn's report which the ALJ rejected. As discussed above, the ALJ did not err in failing to credit Dr. Truhn's opinions and thus, Plaintiff's argument is unavailing.

Plaintiff additionally argues that the ALJ erred in rejecting the Goodwill Assessment for being inconsistent with Dr. Perry's findings because, Plaintiff contends, Dr. Perry lacked adequate information about Plaintiff's physical problems. Plaintiff points to a spinal x-ray taken approximately two weeks after Dr. Perry's examination which showed multilevel advanced degenerative disc disease at L1-2, L4-5, and L5-S1. Tr. 437. In essence, Plaintiff argues that Dr. Perry's opinions are invalid because Dr. Perry did not have the information obtained by the July

2009 spinal x-rays and as a result, it was error for the ALJ to reject the Goodwill Assessment as being inconsistent with Dr. Perry's findings.

The ALJ needed only give reasons "germane to the witness" to support his rejection of the Goodwill Assessment. <u>Valentine</u>, 574 F.3d at 694 (standard required for discounting lay witness testimony). Plaintiff does not challenge the first two reasons given by the ALJ and it cannot be contested that they were sufficient. As to the third reason, the ALJ expressly noted the x-ray and that it revealed multilevel advanced degenerative disk disease and that Dr. Perry's examination revealed a limited range of motion and a positive straight leg test. Tr. 35. However, the ALJ explained that Dr. Perry's examination also showed that Plaintiff had no evidence of back pain radiating in the lumbar spine, had 5/5 lower extremity strength and foot strength, and had normal sensation, "suggesting limited functional limitations." <u>Id.</u> Moreover, the lack of subsequent treatment for back pain also supported a finding of limited physical restrictions. <u>Id.</u>

Given that the ALJ endorsed Dr. Perry's findings despite the diagnosis obtained two weeks later in the July 2009 x-ray, the ALJ did not err in finding the Goodwill assessment to be inconsistent with Dr. Perry's findings. The inconsistency was an additional germane reason to discount the Goodwill assessment.

IV. Work in the National Economy

Plaintiff argues that the ALJ failed to meet his step five burden to show that Plaintiff was capable of performing work in the national economy. He contends that the RFC presented to the VE was flawed because it erroneously omitted the limitations assessed by Dr. Truhn, Dr. Rethinger, and Hargett. However, because the ALJ's rejection of those opinions was not error, the ALJ's finding at step five is supported by substantial evidence in the record. The RFC is not

invalid and the ALJ properly relied on the VE's testimony.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ____31____ day of ____OCT_____, 2013

_Marco A. Hernandez_
Marco A. Hernandez
United States District Judge

21 - OPINION & ORDER